

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bascom Giles
Commissioner General Land Office
Austin, Texas

Dear Sir:

Opinion No. 0-3943
Re: Authority of Commissioner to
refund rental payments by al-
lowing oil and gas lessees to
deduct same from royalty pay-
ments due State.

This will acknowledge receipt of your opinion re-
quest dated September 8, 1941, wherein you stated that the
Board for Lease of Eleemosynary and State Memorial Land exe-
cuted an oil and gas lease to Petroleum Producers Company
covering 600.09 acres of the Wichita Falls State Hospital
land on March 16, 1938, 237.7 acres of which was transferred
by assignment dated May 28, 1938, from Petroleum Producers
Company to Shell Petroleum Corporation, the original lease
providing "whenever the royalty paid by lessee shall amount
to as much as the yearly payments herein provided on the
acreage held hereunder the yearly payments may be discon-
tinued. When royalties paid during any primary term of
lease are less than said rental, then a sufficient sum in
addition to the royalties shall be paid so that said royal-
ties and such payments shall equal the annual delay rental
hereinabove provided for". You further set out in your re-
quest that the annual delay rental provided for was $1.00
per acre per annum during the primary term of five years,
that the Petroleum Producers Company had paid royalties on
the portion of the lease held by it for the years beginning
March 16, 1939, and March 16, 1940, in excess of the total
amount of rental provided for on the entire 600.09 acres in
the lease, and the Shell Petroleum Corporation had in addi-
tion to that paid delay rentals on the acreage assigned to
it for the years beginning March 16, 1939, and March 16, 1940,
in the total sum of $475.40.

You request an opinion of this department as to
whether or not an arrangement could be made whereby the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Petroleum Producers Company could pay the Shell Petroleum Corporation the monthly royalties due the State out of its production until the $475.40 is liquidated.

It is the opinion of this department that you are not authorized to make such an arrangement for the repayment of this money to the Shell Petroleum Corporation. The money received from this lease has been paid into the General Revenue Fund, and there is no appropriation or authority by which said money can be refunded to the Shell Petroleum Corporation by a direct payment from the General Revenue Fund, and since this cannot be done directly, it cannot be done by indirection. The Petroleum Producers Company is bound to pay the full amount of the royalty as provided for in the lease on the production therefrom each and every month to the Commissioner of the General Land Office to the credit of the General Revenue Fund, which definitely precludes its being credited to or turned over to the Shell Petroleum Corporation.

You did not set out in your letter why Shell Petroleum Corporation paid this rental, but it appears that it was done voluntarily and if it was done under a mistake of law there is no liability on the State to refund it. See Galveston County v. Gorham, 49 Texas 279; Gillian v. Alford, 6 S. W. 757; Taylor v. Hall, 9 S. W., page 141.

It occurs to us that the Shell Petroleum Corporation has received some benefit from the payment of the above rental since it is some evidence that it does not desire to abandon the portion of the oil and gas lease assigned to it. However, payment of rental after the discovery of oil on a tract of land leased for oil and gas purposes does not satisfy the implied obligation to reasonably develop the leased premises. Texas Co. v. Davis, 255 S. W. 601. The court in the case of Cox v. Sinclair Gulf Oil Company, 265 S. W. 196, held

". . . It became the duty, under the implied covenants of the lease, after the discovery well or wells were completed, of each assignee to commence within a reasonable time, and to prosecute with reasonable diligence, the development of oil and gas on their respective segregated portions of the lease.

"The reasonable time for commencement of drilling and the reasonable diligence to develop depended on the facts and circumstances surrounding each segregated portion of the lease.

"A failure to so develop would authorize the lessor to cancel the lease as to each assignee so in default. Likewise would the lessor be entitled to cancel the entire lease as to all assignees of segregated portions for the failure of any one of the assignees to develop his segregated portion, where they all rely upon his acts of development to vest in them the right to thereafter drill for oil or gas. Such reliance on another assignee to vest this right is at the peril of those so relying. Harris v. Michael, supra."

In the case of W. T. Waggoner Estate v. Siegler Oil Company, 19 S. W. (2d) p. 27 in an opinion by Justice Greenwood the Supreme Court used the following pertinent language:

"The following propositions must be regarded as settled by repeated decisions of the Supreme Court; * (2) The estate acquired by the so-called lessee and his assigns was a determinable fee which was lost on cessation of the use of the land for purposes of oil and gas exploration, development and production; * (3) The estate of the lessee or his assigns did not survive abandonment; * (4) Where a mining lease provided for oil or gas royalties and failed to define the lessee's duty as regards development after discovery of paying oil or gas the law implied the obligation from the lessee to continue the development and production of oil or gas with reasonable diligence; * (6) The usual remedy for breach of lessee's implied covenant for reasonable development of oil and gas is an action for damages though under extraordinary circumstances where there can be no other adequate relief, a court of equity will entertain an action to cancel the lease in whole or in part."

We point out the above for the reason that it occurs to us that since production has been profitable on a portion of the leased premises for the past few years that on further investigation it might appear that the Shell Petroleum Corporation should be requested to either release to the State the acreage held by it or immediately begin operations for reasonable

development of same as required by the lease together with the implied obligation which the law reads into same. Trusting that this answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By                        (signed)
D. D. Mahon
Assistant

DDM:mp

APPROVED SEP 23, 1941

(signed)  Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY B.W.B.
CHAIRMAN

O.K.
G.R.L.